JANVIER, Judge.
A. M. & J. Solari, Ltd., is a corporation engaged in the sale, among other commodities, of alcoholic liquors at retail for consumption off the premises. It brought this mandamus proceeding against the City of New Orleans and Robert E. Develle, the Director of Finance of the city, for the purpose of having determined two questions which, as stated in the brief filed on behalf of the city and Develle, are as follows:
“(a) Is the procedure for collection of liquor license renewal fees as defined by State law mandatory as to the City of New Orleans?
“(b) Assuming the State procedure precludes the exercise of local discretion as to the collection of renewal fees, can the City of New Orleans and/or its agents charged with collection of the local renewal fees be compelled by mandamus to comply with the general State law?”
Relator, the Solari Company, has appealed devolutively from a judgment of the Civil District Court for the Parish of Orleans, rendered both on exception of no cause and no right of action and on the merits, which judgment recalled, vacated and annulled the alternative writ of mandamus which had been issued and which judgment dismissed the suit of the relator at its cost.
By LSA-Revised Statutes, Title 26, known as “The Alcoholic Beverage Control Law,” there is created the Louisiana Board of Alcoholic Beverage Control, and there are provided many regulations governing the sale of alcoholic liquors. Under the said law there are recognized two grades of alcoholic liquors — those containing less than 6% of alcohol by volume and those containing more than 6%. For the purpose of this discussion and our determination of the issues presented, the distinction between the two is of no importance.
Section 86 of the State statute (LSA-R.S. 26, as amended by Act 355 of 1952 and Act 36 of 1956), insofar as liquors containing more than 6% of alcohol by volume are concerned, provides:
“Renewal of permit. Persons holding permits under this Chapter, whether state or local, shall file application for renewal thereof for the ensuing year and pay the permit fees on or before November 1st of each year * * *.”
Insofar as liquors containing less than 6% of alcohol by volume are concerned, Section 284 of the law provides:
“Renewal of permit. Persons holding permits under this Chapter, whether state or local, shall file applications for renewal thereof for the ensuing year in the manner provided by this Chapter on or before November 1st * * »
While, in this particular section, there is no express requirement that such a license or permit shall be issued on an annual basis and shall be paid for in full when application is made, it is quite clear that the words, “in the manner provided by this Chapter on or before November 1st * * * ”, have reference to section 278 of Chapter 2, which provides that such applications “shall be mailed or delivered to the respective local authorities with the permit fee.”
We do not hesitate to declare that the proper interpretation of the quoted sections requires that all such renewals shall be for the entire ensuing year and that an entire year’s fee shall be paid when the request for the renewal is made, which must be on or before November 1 of each year. And our confidence that this statement is correct is bolstered by the fact that there is still another provision found in section 71 which does permit the issuance of new permits as distinguished from renewals and which provides that, before the applicants for such new permits may engage in the business, they must secure “annually” a permit “dating from January 1st of each year”, but which also provides that if such persons *290 (not renewal applicants) desire, after July 1st in any year to commence to engage in such business, they shall pay one-half the annual fee.
As already stated, we have no doubt at all that these several provisions under which all persons who engage in the sale of liquors at retail and for consumption off the premises must secure their licenses “whether state or local,” mean that such licenses when applied for must be paid for the entire term — either one year, where there is a renewal or where a new license is applied for before July 1st, or a one-half year where a new license is applied for after July 1st.
And we are quite sure too that nowhere in the law may there be found any authority for the issuance of licenses, whether state or local, on a quarterly basis, or for the permitting of the licensee to pay for his license on a quarterly basis even if the license is issued for a whole year in the one case, or for one-half year in the other. The law plainly requires that every license when issued shall have been paid for in advance and for the entire term and, as already stated, counsel for respondents seem to concede that the law so states, but contend, as already shown from their brief, that the State law is not mandatory as to them and that, if it is mandatory, neither the City of New Orleans nor any of its agents may be compelled by mandamus to comply for the reason that the city ordinance permits the issuance of licenses to be paid for on a quarterly basis and consequently mandamus will not lie to compel the city or its agents to do any act contrary to the provisions of a city ordinance; and the respondents further contend that in any event the Solari Company, the relator, is without any interest to compel compliance with the State statute and that therefore no right of action exists in that company.
While we find nothing in the record nor in the briefs to so indicate, we were told in oral argument that, at the time the suit was filed, the City of New Orleans issued licenses on a quarterly basis. Whether this is true or not is of no importance now for it is conceded that, after the suit was filed and before it was tried, the city ordinance on the subj ect was amended so as to provide for the issuance of licenses for the entire period requested to permit the payment therefor on a quarterly basis so that now it is conceded that the city ordinance on the subject (originally No. 18,537, C.C.S., now Chapter 5 of the New City Code, Ordinance No. 828, M.C.S.) permits licenses to be issued and paid for one-quarter of the total amount at the beginning of each quarter of the year.
The contention that the Solari Company is without interest is in our judgment without the slightest foundation in fact. Tlie Alcoholic Beverage Control Law, as shown by the evidence, and, as is very obvious, has as its object the regulation of business, which though perfectly legal and unobjectionable, if properly conducted, may be the source and cause of crime, immorality and other vices if not carefully regulated.
The record shows beyond doubt that,- as a result of the issuance of licenses which may be paid for on a quarterly basis, a very large number of impecunious and financially irresponsible persons find it possible to enter the retail package liquor business during the lush season of the year at Christmas and during the Carnival period and to fade out of the business during the balance of the year.
Mr. Develle himself testified that he urged the city council not to permit such a practice and that, against his advice, the collection of licenses on a quarterly basis was authorized by the city. He testified that a great many dealers operate on a delinquent basis and that in one three-month period alone 900 dealers were found to be delinquent, and he also testified that, in a tremendous number of cases in which there are delinquencies, the operator abandons the premises and goes out of business. Of course, the Solari Company has no legal right to interfere with the city in the col *291 lection of its revenues unless it itself is affected adversely by the failure of the city to enforce the law on the subject, but we think it requires no argument to demonstrate that a legitimate responsible dealer complying with legal requirements has the legal right to insist that all other dealers comply if noncompliance will result in the admission into the business of a tremendous number of irresponsible competitors who will come into the business only at times when the cream may be skimmed off and then vanishing without having to pay the expenses of operating the business during the other unprofitable parts of the year.
Mr. Develle testified that, in his opinion, as a result of permitting licenses to be paid in quarterly installments, the city was actually collecting about $200,000 more in licenses than it would collect if licenses were required to be paid for for an entire period, whether semi-annually or annually. This obviously means that a tremendous number of financially irresponsible dealers are permitted, as a result of quarterly payments, to come into the business and that many of these would not enter the business if compelled to comply with the State law.
Obviously the Solari Company and all other responsible dealers are interested in eliminating competition which can come into the business only as a result of the violation of law.
It necessarily follows, we think, that the exception of no right and no cause of action was not well founded and should have been overruled.
The other contention of the respondents, that mandamus will not lie to compel the city or its agents to do something which is contrary to a city ordinance is also without foundation. Certainly if a constitutional State statute requires action by a city official, or an employee of the city itself, it requires no argument to show that the city cannot, by the passage of a contrary ordinance, interfere with the effect of the State statute. If any jurisprudence on the subject were required, it could be found in the decisions of the Supreme Court in Cook v. City of Shreveport, 163 La. 518, 112 So. 402, and in State ex rel. Sutton v. Caldwell, 195 La. 507, 197 So. 214.
In Cook v. City of Shreveport, supra [163 La. 518, 112 So. 404], a municipality was permitted by State statute to authorize certain paving and to permit payment by property owners on an installment basis, the installments to bear interest at 6 per cent. The City of Shreveport, on those installments, undertook to collect 8 per cent interest and certain property owners brought mandamus proceedings to compel the city to accept installment payments bearing 6 per cent interest. The same contention was made by the city as is made here. And the Supreme Court held that mandamus will lie to compel the performance by a public officer “of a plain duty, made ministerial by the provisions of a statute”, and held that the mere fact that a city ordinance contains contrary provisions does not authorize the city or its employees to violate the provisions of the statute.
In State ex rel. Sutton v. Caldwell, supra, [195 La. 507, 197 So. 217], the Court said:
“ * * * A municipality cannot permit by ordinance what a statute forbids, or forbid what a statute expressly permits, * *
As already stated, this legal proposition seems so completely sound that further discussion is obviously unnecessary.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the peremptory writ of mandamus issue as prayed for directed to the Honorable Robert E. Develle, Director of the Department of Public Finance of the City of New Orleans, and to the City of New Orleans, through the Honorable De-Lesseps S. Morrison, Mayor, commanding them to obey the procedure defined by state law for renewal of both state and local *292 liquor licenses of both 'high and low alcoholic content, and to cease and desist from collecting liquor permit fees on an installment basis; respondents to pay all costs.
Reversed.
Peremptory writ issued.